## In re Anonymous No. 32 D.B. 90

Disciplinary Board Docket no. 32 D.B. 90.

ECKELL, *Member*, January 16, 1991—A petition for discipline was filed as of the above number charging respondent with violation of the following Rules of Professional Conduct:

Rule 1.3: A lawyer should act with reasonable diligence and promptness in representing a client;

Rule 1.4(a): A lawyer shall keep a client informed about the status of a matter and promptly reply with reasonable requests for information;

Rule 1.5(b): When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation;

Rule 1.16(d): Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as

giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

The hearing committee, in its report, found insufficient evidence to sustain discipline under sections 1.3 and 1.4(a). The committee further found no evidence under section 1.16(d) to find that the client's interest was not protected, or that the client was in any way prejudiced. The hearing committee did, however, find a violation of section 1.5(b) that respondent had not communicated the basis or rate of the fee to the client in writing, and based upon that violation recommended an informal admonition.

The Disciplinary Board dismisses the charges regarding 1.3 (reasonable diligence) and 1.16(d) (protection of client upon termination). The board further finds a violation of 1.4(a) (communication with the client) and 1.5(b) (written communication of basis or rate of fee). The Disciplinary Board concurs with the recommended discipline of the hearing committee; namely, an informal admonition.

The charges arose out of respondent's engagement to represent the interests of [   ]. Complainant first met with respondent on May 3, 1988 to engage him to resolve a problem he was having in his backyard regarding his neighbor's blocking the flow of water to a swale which ran on complainant's property, with resulting damage. This was the first time respondent represented complainant. The engagement was consummated by a request for $500 with which complainant complied. No written statement was ever submitted to complainant concerning

the basis of the fee. Over a period of time spanning at least May 1988 to October 1988, complainant made over 20 phone calls to respondent, but was unable to speak with him. Telephone bills were received in evidence in substantiation of the making of those calls to respondent's office. There were also two certified letters unclaimed by respondent sent to his office and one by regular mail. The written communications from complainant occurred in late November and December 1988. In addition, another attorney, who was contacted by complainant, wrote to respondent requesting that he communicate with complainant. Complainant, thereafter, retained another attorney with whom the matter is presently pending.

Respondent claims he requested a flat fee of $500 from the complainant to undertake research concerning the problem. He claims he advised complainant that he did not handle litigation and, therefore, was only being engaged for purposes of researching the issue in an attempt to resolve it. He testified he had four or five telephone conversations about the status of his research with complainant and with complainant's brother-in-law with whom he had an on-going business relationship. Respondent further indicated that he eventually completed the research which was ultimately returned to complainant together with a return of the full $500 fee. Respondent further offered in mitigation of the charges an account of the mental stress he was under due to the loss of approximately $25,000 taken by a contractor who had been retained to build a home for his family. He was actively engaged in litigation and attempting to recover his life savings which he ultimately accomplished by garnishing the contractor's portion of a marital settlement. The period of time involved with the attempt to recover

funds corresponded with the time during which complainant was seeking responses from respondent.

## FINDINGS OF FACT

The following findings of fact are adopted by the Disciplinary Board:

(1) Respondent, [ ], Esq., is an attorney admitted to practice law in Pennsylvania in 1974, maintaining an office at [ ]. His attorney registration number is [ ].

(2) Complainant engaged respondent on May 3, 1988 and respondent accepted $500 to represent complainant's interests.

(3) This is the first time respondent represented the complainant. No written communication was forthcoming from respondent to complainant concerning the basis or rate of fee.

(4) During the period of time from May 1988, after the first interview, until approximately October 1988, respondent did not communicate with complainant. During the same period of time, complainant attempted to communicate with respondent at least 20 times without success.

(5) Respondent undertook and did research for complainant and expended time in an effort to evaluate complainant's case.

(6) Respondent communicated, from time to time, the status of complainant's case to complainant's brother-in-law. However, complainant was not made aware of these communications, nor had complainant authorized or requested respondent to communicate with his brother-in-law.

(7) On October 28, 1988, respondent returned complainant's telephone call and indicated that he would forward some letters to complainant.

(8) On November 21, 1988, complainant sent a letter to respondent requesting that respondent return his $500 so that he might pursue this case with another attorney.

(9) On December 5, 1988, [    ], Esq., on behalf of complainant, wrote to respondent requesting that he make some arrangement to appropriately conclude this matter for complainant. Respondent never responded to that letter.

(10) Complainant wrote a letter to respondent on February 14, 1989 terminating respondent's services.

(11) After being contacted by the Disciplinary Board on March 28, 1989, respondent returned the full $500 fee and other material furnished by complainant together with respondent's research to complainant.

(12) Complainant retained another attorney who commenced litigation on behalf of complainant which is presently pending.

## DISCUSSION

The record does not contain sufficient evidence to sustain a finding that respondent did not act with reasonable diligence and promptness in representing a client as required by Rule 1.3 of the Rules of Professional Conduct. Although there may be some issue as to whether respondent was retained to pursue complainant's matter to termination, or merely to do the research with ultimate litigation to be performed by another, the record is void of any evidence that would show during this period of time that complainant was in any way prejudiced by the eight or nine months during which the research was allegedly being pursued. This being a case of damage to real estate with a relatively long statute of

limitations, together with mitigating circumstances during this period of time of respondent's personal difficulties, the board is unable to find sufficient evidence to charge a violation of Rule 1.3.

Similarly, there is insufficient evidence to find that upon termination of the representation, respondent did not take steps to reasonably protect complainant's interests, although it took the intervention of Disciplinary Counsel before the actual return of fee and papers occurred. The board concludes that the evidence is insufficient to sustain a charge under Rule 1.16(d).

However, under the facts of this case, the board finds sufficient evidence of respondent's failure to appropriately communicate with his client. That failure coupled with a technical violation (although inadvertent) of Rule 1.5(b), sustains the necessity that respondent be disciplined with an informal admonition. It should be noted that although there was no written basis communicated to complainant regarding the basis or rate of respondent's fee, the fee issue was never a matter pursued by complainant, or in any way raised by him. Standing alone, the written statement of the fee issue would not have supported discipline. This conclusion is limited to the facts in this case. This is not to say, however, that in the future, in other cases, non-compliance with Rule 1.5 alone would not sustain discipline.

The Disciplinary Board is sensitive to the fact that respondent had severe personal problems during the period of time in question. However, as professionals, we are held to standards not applicable to the public in general. No doubt, there are many occasions in which lawyers must prioritize competing demands for their time and efforts; and unquestionably, there are certain personal and family situations which would justify prioritizing those needs ahead

of clients' needs. However, even on those special occasions, the lawyer, as a professional, must make provisions for dealing with his clients' needs. Specifically, in this case, assuming respondent made an appropriate determination that his personal family needs vis-a-vis the loss of funds to the contractor should be prioritized ahead of his clients', he then had a number of alternatives available to him in dealing with his clients. He could have:

(1) Obtained all phone messages from his office and returned those phone calls daily, either early in the morning (between 6 to 8 a.m.), or at night (between 8 to 10 p.m.);

(2) He could have reviewed each phone call with his office and instructed his secretary to return each phone call with appropriate instructions, and then only return those phone calls himself personally which arose to emergency status; and

(3) He could have written a form letter to all' clients advising them that he had a consuming personal family problem demanding his attention and requesting that they call him at home at given hours (early in the morning or late in the evening), and giving them the alternative of retaining another lawyer to service their needs while he attended to his personal problem.

Undoubtedly, with some creativity, other acceptable alternatives could have been found.

The point the board wishes to make is that clients' needs must be attended to, in some way, even on those occasions when a lawyer appropriately prioritizes his personal needs above those of the clients.

## CONCLUSION

The Disciplinary Board, therefore, finds no violation of the following Rules of Professional Conduct:

Rule 1.3: A lawyer shall act with reasonable diligence and promptness in representing a client;

Rule 1.16(d): Upon termination of representation, a lawyer shall take steps to the extent reasonably practical to protect the client's interest, such as surrendering papers and property to which a client is entitled, and refunding any advance payment of fee which has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

The Disciplinary Board does find a violation of the following Rules of Professional Conduct:

Rule 1.4(a): A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information; and

Rule 1.5(b): A lawyer who has not regularly represented a client, shall communicate to the client in writing the basis or rate of his fee within a reasonable time after commencing representation.

## DISPOSITION

The Disciplinary Board directs that respondent receive an informal admonition.

Messrs. Brown and Hill did not participate in the adjudication.

## ORDER

TUMOLO, *Chairman*—And now, January 16, 1991, upon consideration of the report and recommendation of Hearing Committee [   ] filed September 27, 1990; it is hereby ordered that the said [respondent] of [   ] County be subjected to an informal admonition by Disciplinary Counsel as

provided in Rule 204(a)(6) of the Pennsylvania Rules of Disciplinary Enforcement. Costs are to be paid by respondent.